PENBERTHY INJECTOR CO. *v.* LEE.

TRADE-NAMES—RIGHT TO EXCLUSIVE USE—INJUNCTION.

One Penberthy, the inventor of an appliance for injecting water into steam-boilers, procured the organization of a corporation for the manufacture and sale of the appliance, and, in consideration of a transfer of his patent to the corporation, became the owner of nearly all of its shares of stock. He insisted upon the adoption of "Penberthy Injector Company" as the corporate name, and upon the use of his name on the injectors and in all the advertising, which was very extensive, by virtue of which the name "Penberthy Injector" became everywhere familiar to the trade. After six years, Penberthy disposed of his interests in the corporation, and engaged, in

company with former officers and employés of the corpora-
tion, in the same vicinity, in the manufacture of injectors
under a patent issued to Penberthy covering an appliance of
like principle and appearance to that made by the corpora-
tion. The firm adopted the name "Lee-Penberthy Manufac-
turing Company," and used the word "Penberthy" upon its
product and in all its advertising. *Held,* that the corporation
was entitled to an injunction on the ground of infringement
of its trade name.

Appeal from Wayne; Adams, J., presiding. Sub-
mitted April 5, 1899. Decided May 9, 1899.

Bill by the Penberthy Injector Company against Wil-
liam O. Lee, Thomas J. Sweeney, Homer Pennock, and
William Penberthy, copartners as the Lee-Penberthy
Manufacturing Company, to enjoin the use by defendants,
in their firm name and in their advertising, of the word
"Penberthy," in such manner as to mislead complainant's
customers. From a decree for complainant, defendants
appeal. Affirmed.

*T. T. Leete, Jr.,* and *James Whittemore,* for com-
plainant.

*C. C. Yerkes, T. E. Tarsney,* and *W. G. Fitzpatrick,*
for defendants.

MOORE, J. This is an appeal by defendants from a
decree entered in the court below in favor of the com-
plainant. The written opinion by Judge Adams is sus-
tained by the record. It states the question involved so
clearly that a portion of it is quoted as a statement of the
case:

"The bill in this case was filed in January, 1898, for
the purpose of restraining the defendants from infringing
a certain trade-mark or trade-name made use of by com-
plainant in its business for several years. It appears
from the bill and defendants' answer, and the proofs
taken, that complainant is a corporation organized in
April, 1886; that the original stockholders were defend-

ants William Penberthy and Homer Pennock, and one S. Olin Johnson; that the capital stock was divided into 2,000 shares, of $25 each, of which William Penberthy took 1,998, and the others 1 each; that the purpose of the corporation was to make and sell injectors for injecting water into steam-boilers, under a patent applied for by said Penberthy; and that, in consideration of the transfer to the company of said invention by said Penberthy, said shares of stock were issued to said Penberthy. He does not appear to have contributed any money, or anything but the invention. The name 'Penberthy Injector Company' was adopted because said Penberthy requested it and insisted upon it; and also he insisted that the name should appear on the injectors, and be advertised in connection with the business, all of which was assented to by his then associates, and carried into effect.

"It also appears that complainant proceeded, as soon as organized, to obtain a manufacturing plant at 228 Abbott street, in Detroit, obtained tools and machinery, and proceeded to make tests and experiments, and manufactured some 2,000 injectors pursuant to said patent, in which experiments and tests and manufacturing the company expended about $5,000, but the injectors so made were a failure, and many were returned; that thereupon the company made certain improvements, which were patented in the name of the company, and known as 'Desmond's first and second patents,' and 'Sweeney's patent,' and finally obtained an injector which was satisfactory, and a success commercially, which it proceeded to manufacture and sell to a large extent, and that upon all so manufactured and put upon the market, at the request and with the consent of said Penberthy, the words 'Penberthy Injector,' in one form or another, appeared, never omitting the word 'Penberthy;' that the complainant issued large quantities of printed matter, and advertised in trade journals extensively, in all which advertising the same name 'Penberthy' appeared in connection with the injector, so that this injector became generally known throughout the United States, and even in foreign countries, as the 'Penberthy Injector,' and as such was favorably received and considered; that in such printing and advertising the complainant expended about $75,000, and by these means the word 'Penberthy,' both upon the injectors and in the advertisements and printed matter, and also as a part of the corporate name of complainant, became of

very great value and importance, as a trade-mark or
trade-name, to complainant.   It further appears that the
defendant Pennock became interested in complainant cor-
poration as a stockholder for several years, and was at one
time president of the corporation; that defendant Sweeney
was the mechanical superintendent and experimenter for
complainant from 1886 up to 1897, and that defendant
William O. Lee was employed by complainant as a travel-
ing salesman from 1886 up to 1897, and that the defendant
Penberthy was a stockholder in complainant corporation
from its organization, in 1886, till 1892, when he sold his
remaining stock for the sum of about $5,000, and retired
from the corporation.

   " It further appears that defendant William Penberthy,
in about 1892, and after selling his said stock, obtained a
patent upon an injector embodying substantially the same
principles, and of nearly the same general appearance, as
complainant's injector (the main difference being in the
use of rubber ball valves instead of hinge valves, but ac-
complishing substantially the same purposes, and in sub-
stantially the same way); that afterwards (in 1897, if I
mistake not) defendant Penberthy, in conjunction with
the other defendants, formed a copartnership, under the
name of the Penberthy-Lee Manufacturing Company or
the Lee-Penberthy Manufacturing Company (both names
appearing at one time or another), for the purpose of
making and selling injectors under said patent of 1892;
that they located their plant in the city of Detroit, and on
Abbott street, and have largely advertised their said in-
jectors in nearly the same general form, appearance, and
manner as complainant's advertisements, using the word
'Penberthy,' in some form or connection, in all cases, and
marking their goods in some form of expression, in all
cases, embracing the word 'Penberthy.'   And complain-
ant claims all this to have been done in simulation of
complainant's trade-mark and trade-name, and for the
unjust and fraudulent purpose of trading upon complain-
ant's reputation, and appropriating to themselves com-
plainant's good will, and diverting to themselves the busi-
ness of the complainant, by inducing the purchasers of
injectors to suppose that, in buying the injectors made
and sold by defendants, they were purchasing the Pen-
berthy injectors made and sold by complainant, in fraud
of the rights of complainant, and to complainant's great
injury.

" The proofs taken disclose the fact that, since the filing of complainant's bill, the defendants have become incorporated under the name of the Lee-Penberthy Manufacturing Company; that now they inscribe upon their injectors the words 'Lee Automatic Injector' on one side, and on the other, 'Wm. Penberthy's Patent;' giving, in small letters, the date and number. But no change has been made of any importance in their advertising matter. The word 'Penberthy,' in some form or connection, always appears.

" There does not seem to be much, if any, dispute between the parties as to the main facts in the case. The question is as to the use of the word 'Penberthy' in connection with the manufacture and sale of injectors. The complainant claims that it has the exclusive right to use that name as a trade-mark or trade-name, upon three grounds, namely: (1) That it is a part of its corporate name, and indicates origin and ownership; (2) that the name was adopted in the first place, and used for many years, at the instance and request, and with the knowledge and consent, of said William Penberthy, and that now, after the large expenditures by complainant in advertising its goods under the name, and making its injectors known to the world as, the 'Penberthy Injector,' the defendant Penberthy is estopped from making use of the same name in connection with injectors, and from conferring that right on defendants, either as a copartnership or corporation; and (3) that, under the circumstances, the name has become impersonal, and does not represent William Penberthy, or any other person, but is simply a trade-mark or trade-name applied to complainant's injectors. On the other hand, defendants claim that the only right complainant ever had to the use of the name was by contract, by which it had the right to apply the name to injectors manufactured under William Penberthy's original patent, but only to such injectors; that, having abandoned the manufacture of injectors under that patent, complainant forfeited the right to the use of the name in its business, or as a trade-mark upon its injectors made under other and later patents. And, second, defendants claim that William Penberthy has the natural right, of which he cannot be deprived, to use his own name in connection with his own business, either alone or in connection with others. The question presented is largely a question of law."

After discussing the law of the case, the learned judge continued:

"But it seems to me useless to follow the authorities any further, considering the relations that all of the defendants held to the complainant corporation. Considering the proof, from the testimony of William Penberthy and others, as to his authorizing, requesting, and insisting upon the name 'Penberthy' appearing in the corporate name of complainant, and upon the injectors manufactured by complainant; considering the large outlay by the complainant in advertising and making this name widely known, and the sale by Penberthy of his stock in 1892, and his subsequent proceedings, and the formation of the defendant company, and its location on Abbott street, and their persistence in using the word 'Penberthy' upon their goods, and in their business and corporate name, and in all their advertising matter; and considering the proof that buyers and people dealing with the concern were led to think that defendant copartnership or corporation was a continuation of complainant's business, as successor or otherwise,—I cannot doubt that defendants intended to appropriate a portion of complainant's good will and good reputation.  I cannot doubt that the natural tendency of the situation would be to divert the complainant's business to the defendants.  I do not question or doubt the general natural right which a man has to use his own name in his own business without interference; but I think, in a case like the present one, such right should be guarded by language sufficiently clear and explicit to notify all persons that the business is not that of another.  I do not think this has been done by these defendants, and I am of the opinion that complainant has made out a good case, and is entitled to the injunction prayed for, with costs."

And the following decree was entered:

" That the said defendants, severally and jointly, and the firm and corporation known as the Lee-Penberthy Manufacturing Company, their counselors, attorneys, solicitors, agents, servants, and workmen, be, and they are, each and every one of them, enjoined from the use of the name 'Penberthy' in the firm or corporate name in any way, and from the use of the name 'Penberthy' upon their product, packages, or advertising matter, or advertisements.  But said defendants may indicate that their product is manufactured under W. Penberthy's patent, if such be the fact, provided that with each and every such statement, and in connection therewith, there shall be also

indicated, in type equally as prominent, that 'W. Penberthy is distinct from, and has no connection with, the original Penberthy Injector Company.'"

The legal principles involved which are decisive of this case are also involved in the case of *Lamb Knit-Goods Co.* v. *Lamb Glove & Mitten Co.*, *ante*, 159, so it will not be necessary to discuss them here. In addition to the authorities cited in the *Lamb Knit-Goods Co. Case*, the following are cited: *William Rogers Manfg. Co.* v. *Rogers & Spurr Manfg. Co.*, 11 Fed. 495; *Goodyear Rubber Co.* v. *Goodyear's Rubber-Manfg. Co.*, 21 Fed. 276; *R. W. Rogers Co.* v. *Wm. Rogers Manfg. Co.*, 17 C. C. A. 576, 70 Fed. 1017; *Garrett* v. *T. H. Garrett & Co.*, 24 C. C. A. 173, 78 Fed. 472; *Merchants' Detective Ass'n* v. *Detective Mercantile Agency*, 25 Ill. App. 250; *Russia Cement Co.* v. *Le Page*, 147 Mass. 206 (9 Am. St. Rep. 685); *Howe* v. *Machine Co.*, 50 Barb. 236; *Newman* v. *Alvord*, 51 N. Y. 189 (10 Am. Rep. 588).

The decree is affirmed, with costs.

Grant, C. J., Montgomery and Hooker, JJ., concurred. Long, J., did not sit.